UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAMEIDRA CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | 18 C 7039 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| ILLINOIS GAMING BOARD, MARK OSTROWSKI, KAREN WEATHERS, FRANK SPIZZIRI, RUBEN SANTIAGO, CHRIS MOORE, WILLIAM DOSTER, ZENIAH WARD, THOMAS HOBGOOD, AGOSTINO LORENZINI, and BETH DUESTERHAUS, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Sameidra Carter alleges that the Illinois Gaming Board ("IGB") and several of its employees and officers violated the First Amendment and Illinois law by retaliating against her, including by terminating her employment, for complaining about discriminatory workplace behavior. Doc. 14. Defendants move to dismiss the amended complaint under Civil Rules 12(b)(1) and 12(b)(6). Docs. 28, 46. Carter's First Amendment claim is dismissed without prejudice under Rule 12(b)(6), and her state law claim is dismissed for want of subject matter jurisdiction under 28 U.S.C. § 1367(c)(3), though she will be given a chance to replead.

**Background**

In resolving a Rule 12(b)(1) or Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016) (Rule 12(b)(6)); *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (Rule 12(b)(1)). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred

1

to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Carter's briefs opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Carter as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

The IGB is a state agency that enforces certain gaming laws in Illinois. Doc. 14 at ¶ 5. In 2015, Carter was employed by the IGB as a Senior Special Agent in its Tinley Park office. *Id*. at ¶¶ 16-20. On September 28, 2015, IGB Master Sergeant Zeniah Ward addressed Carter in a discriminatory and harassing manner. *Id*. at ¶¶ 12, 21-24. Carter complained to IGB Video Master Sergeant William Doster and IGB EEOC Officer and Human Resources Liaison Karen Weathers about Ward's conduct. *Id*. at ¶¶ 7, 11, 22-23.

As a result of her complaint, Carter was reassigned on October 6, 2015 to the IGB's Des Plaines office. *Id*. at ¶ 25. On December 30, 2015, Weathers told Carter that Weathers had investigated her complaint and found no substantial evidence of discrimination. *Id*. at ¶ 27. Because Ward was set to retire on December 31, 2015, Carter was ordered to return to the IGB's Tinley Park office as of January 4, 2016. *Id*. at ¶ 28. In Carter's view, Weathers failed to take appropriate action in response to her complaint about Ward. *Id*. at ¶ 29.

In the meantime, on November 13, 2015, Carter went to a supplier to acquire a shoulder holster and, when exiting her vehicle, IGB employee Chris Moore approached and demanded that she tell him what happened between her and Ward. *Id*. at ¶¶ 30-35. Three days later, Moore falsely told his supervisor that Carter had opened her door into his vehicle, damaging it. *Id*. at

2

¶¶ 38-40.  On November 19, 2015, at the request of a non-party supervisor, Carter submitted two memoranda regarding the incident with Moore.  *Id*. at ¶¶ 41-43.  The IGB began an investigation into Carter, which Doster concluded on February 5, 2016.  *Id*. at ¶¶ 44-46.  The IGB scheduled a pre-disciplinary hearing for March 10, 2016 to address allegations that Carter damaged a state vehicle, engaged in conduct unbecoming, falsified documents, and lied to a sworn law enforcement officer.  *Id*. at ¶¶ 46-48.

Two days before the scheduled hearing, the IGB approved Carter's being placed on medical leave due to her high-risk pregnancy, and the next day told her that the hearing would be rescheduled upon her return to work in May 2017.  *Id*. at ¶¶ 49-53.  During Carter's absence, IGB Supervisor Ruben Santiago completed an evaluation of Carter and stated that she did not return to work as of March 8, 2017.  *Id*. at ¶¶ 8, 53-54.  Carter returned to work in May 2017 and was notified that the pre-disciplinary hearing would occur on May 26, 2017.  *Id*. at ¶ 55.

In addition to the matters involving the interaction with Moore, Carter was further charged with "disclosing confidential [information]."  *Id*. at ¶¶ 56-57.  Carter and Thomas Hobgood interviewed an applicant together on September 25, 2015, and Hobgood falsely told supervisors that Carter disclosed to the interviewee a confidential report.  *Id*. at ¶¶ 58-62.  Carter in fact did not disclose the confidential report, and the IGB did not press the issue regarding the September 22, 2015 incident until after Carter complained about Ward.  *Id*. at ¶¶ 57, 61-62.  IGB Labor Relations Liaison Beth Duesterhaus "was part of a multidisciplinary team tasked with preparing the second set of charges" against Carter.  *Id*. at ¶¶ 14, 63-64.

When she returned to work in May 2017, Carter sent IGB Gaming Operations Officer Agostino Lorenzini, in his role as the designated EEOC officer, a formal complaint of further harassment.  *Id*. at ¶¶ 10, 65-66.  Lorenzini did not address the complaint during the following

3

three weeks. *Id*. at ¶ 67. On June 6, 2017, Carter was placed on suspension pending termination. *Id*. at ¶ 69. She was terminated effective July 3, 2017. *Ibid*.

## Discussion

The amended complaint brings a claim under 42 U.S.C. § 1983 for First Amendment retaliation and a claim under Illinois law for violation of the Illinois State Officials and Employees Ethics Act, 5 ILCS 430/15-5 *et seq*.

### I. First Amendment Retaliation Claim

Carter's First Amendment claim alleges that Defendants retaliated against her for complaining about Ward's discriminatory and harassing conduct. The IGB seeks dismissal on jurisdictional grounds, arguing that the it enjoys sovereign immunity under the Eleventh Amendment from Carter's § 1983 damages action, and alternatively on the merits, arguing that it is not a "person" within the meaning of § 1983. Doc. 29 at 6. Carter agrees that dismissal is appropriate. Doc. 41 at 5. Under governing precedent, the appropriate course is to dismiss the § 1983 claim against the IGB on the merits because it is not a "person." *See Mercado v. Dart*, 604 F.3d 360, 361-62 (7th Cir. 2010) (holding that "because a state (including a state officer sued in an official capacity) is not a 'person' for the purpose of § 1983[,] … it [is] unnecessary and inappropriate to consider what limits the eleventh amendment would create") (citations omitted).

That leaves the First Amendment claim against the individual Defendants. "To establish a claim for retaliation in violation of the First Amendment, a public employee first must prove that her speech is constitutionally protected." *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016). Defendants contend that Carter's complaints about Ward's conduct are not protected First Amendment speech. Doc. 29 at 4-5; Doc. 47 at 4-5. "The determination of whether speech is constitutionally protected is a question of law." *Kubiak*, 810 F.3d at 481.

4

"For a public employee's speech to be protected under the First Amendment, the employee must show that (1) [she] made the speech as a private citizen, (2) the speech addressed a matter of public concern, and (3) [her] interest in expressing that speech was not outweighed by the state's interests as an employer in promoting effective and efficient public service." *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) (internal quotation marks omitted); *see also Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) ("[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."). Thus, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Kubiak*, 810 F.3d at 481 (quoting *Garcetti*, 547 U.S. at 421). "Determining the official duties of a public employee requires a practical inquiry into what duties the employee is expected to perform, and is not limited to the formal job description." *Ibid*. (internal quotation marks omitted).

For an employee's speech to fall outside the First Amendment's scope, it is not enough that the speech took place "inside [an] office, rather than publicly," or that it "concerned the subject matter of [the plaintiff's] employment." *Garcetti*, 547 U.S. at 420-21; *see also Bivens v. Trent*, 591 F.3d 555, 561 (7th Cir. 2010) ("[T]he fact that … speech was entirely internal does not itself render the speech unprotected … .") (citing *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415-16 (1979)). The key question, rather, is whether the speech was made "pursuant to [the employee's] official duties," *Garcetti*, 547 U.S. at 420-21, that is, whether the speech "owe[d] its existence to a public employee's professional responsibilities," *id*. at 421-22.

Settled precedent establishes the following regarding when a public employee's report of official wrongdoing is protected First Amendment speech. If the public employee reports

5

official misconduct in the manner directed by official policy, to a supervisor or an external body with formal oversight responsibility, then the employee speaks pursuant to her official duties and her speech is unprotected by the First Amendment. *See Roake v. Forest Pres. Dist. of Cook Cnty.*, 849 F.3d 342, 346-47 (7th Cir. 2017) (where a police officer complained to his employer about racial profiling and unlawful disciplinary action); *Kubiak*, 810 F.3d at 481-82 (where a police officer reported to her supervisor, her office director, and the Internal Affairs Division that a colleague "verbally assaulted" her); *Fairley v. Andrews*, 578 F.3d 518, 522 (7th Cir. 2009) (where Cook County Jail guards filed internal complaints in the manner required by jail policy); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1091 (7th Cir. 2008) (where an Illinois Gaming Board administrator reported agency misconduct to "a legislative committee responsible for overseeing the [Gaming Board's] activities"); *Vose v. Kliment*, 506 F.3d 565, 570-71 (7th Cir. 2007) (where a police sergeant reported misconduct to his supervisors); *Sigsworth v. City of Aurora*, 487 F.3d 506, 511 (7th Cir. 2007) (where a detective reported misconduct to his supervisor, as required by established policy); *Spiegla v. Hull*, 481 F.3d 961, 965-67 (7th Cir. 2007) (where a correctional officer reported violations of prison security rules to a supervisor, consistent with official policy). By contrast, if an employee testifies about misconduct to a jury or grand jury, or reports misconduct outside official channels or in violation of official policy, she speaks as a private citizen and her speech is constitutionally protected. *See Kristofek v. Vill. of Orland Hills*, 832 F.3d 785, 793-94 (7th Cir. 2016) (where a police officer reported improperly voided citations to fellow officers and to an outside agency despite lacking the express obligation to do so); *Chrzanowski v. Bianchi*, 725 F.3d 734, 739-40 (7th Cir. 2013) (where a county prosecutor testified under subpoena before a grand jury and at trial regarding alleged wrongdoing by his supervisors); *Chaklos v. Stevens*, 560 F.3d 705, 709-12 (7th Cir. 2009) (where Illinois State

Police ("ISP") employees protested an ISP contract award to an ISP procurement official, rather than to the individuals—the Attorney General of Illinois and the chief procurement officer—required by the Illinois Procurement Code); *Houskins v. Sheahan*, 549 F.3d 480, 491 (7th Cir. 2008) (where a county jail social worker reported to the city police, and not to the county sheriff, that a county correctional officer hit her).

Given these principles, Carter's complaints about Ward are not constitutionally protected because she lodged them internally through the appropriate chain of command. Carter's internal complaints to Master Sergeant Doster, Doc. 14 at ¶ 22, and to EEOC Officer Weathers, *id*. at ¶ 23, were made to IGB officials charged with oversight, and thus are akin to the complaints held in *Roake*, *Kubiak*, *Fairley*, *Vose*, *Sigsworth*, and *Spiegla* to fall outside the First Amendment's scope. It follows that Carter's First Amendment retaliation claim fails as a matter of law.

Carter retorts that because she filed a charge with the EEOC, she has stated a First Amendment retaliation claim. Doc. 41 at 5. The operative complaint does not allege that Carter filed a formal EEOC charge—it speaks only to complaints made internally at the IGB. Without further detail regarding the content and timing of her alleged submission to the EEOC, Carter has not set forth facts sufficient to state a claim. *See Edwards v. State*, 1999 WL 59848, at *5 (N.D. Ill. Feb. 3, 1999) (holding that the plaintiff did not state a First Amendment retaliation claim given the lack of allegations regarding "dates or details identifying the 'speech'" or drawing "a causal connection between her speech and" the retaliatory action).

An independent ground for holding Carter's complaints about Ward constitutionally unprotected is that they did not address a matter of public concern. The operative complaint alleges that "[t]he basis of Carter's complaint was that Ward's behavior … was discriminatory and harassing." Doc. 14 at ¶ 24. Carter submits that "[d]iscriminatory and harassing behavior

towards an employee, by a public official … is certainly a matter of public interest." Doc. 41 at 3. But the Seventh Circuit in *Kubiak* expressly rejected the proposition "that speech involving police departments and misconduct of officers is always a matter of public concern," instead explaining that "when analyzing the content of the speech, … [the court] must … focus on the particular content of the speech." 810 F.3d at 483. And *Kubiak* held that where, as here, a government employee complains internally that a fellow employee, in connection with a personal workplace confrontation, treated her in an improper manner, the speech does not qualify as a matter of public concern. *Id.* at 483-84.

## II. State Law Claim

The complaint—correctly, given that the parties are not of diverse citizenship—premises jurisdiction over Carter's state law claim on 28 U.S.C. § 1367(a). Doc. 14 at ¶ 2. Section 1367(c)(3) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pend[e]nt state claims." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007); *see also Dietchweiler ex rel. Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016). That general rule has three exceptions: "when the [refiling] of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Williams*, 509 F.3d at 404; *see also RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 480 (7th Cir. 2012).

None of the exceptions apply here. First, if this court relinquishes supplemental jurisdiction over the state law claim, Illinois law would give Carter one year to refile the claim in state court if the limitations period expired while the case was pending here. *See Sharp Elecs.*

8

*Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 515 (7th Cir. 2009) (citing 735 ILCS 5/13-217); *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (same). Second, as this case is at the pleading stage, substantial federal judicial resources have not yet been committed to the state law claim. And third, it is not clearly apparent how the state law claim will be resolved. Given all this, relinquishing jurisdiction over the state law claim is the appropriate course under § 1367(c)(3). *See Dietchweiler*, 827 F.3d at 631; *RWJ Mgmt. Co.*, 672 F.3d at 479-82.

## Conclusion

Except for the motion to dismiss the § 1983 claim against the IBG on jurisdictional grounds, the motions to dismiss are granted. The dismissal is without prejudice to Carter filing a second amended complaint that repleads her federal claim(s) along with her (originally pleaded or repleaded) state law claim(s). *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily, … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed."). Carter has until December 20, 2019 to file a second amended complaint. If Carter does so, she should strongly consider attaching what she asserts to be the charge she submitted to the EEOC. If she does not file a second amended complaint, the dismissal of her federal claim will convert automatically to a dismissal with prejudice, and the court will enter judgment dismissing her federal claim with prejudice and relinquishing jurisdiction over her state law claim. If Carter files a second amended complaint, Defendants will have until January 10, 2020 to respond.

November 25, 2019

United States District Judge