In the United States District Court
For the Northern District of Illinois

| | |
|---|---|
| SAMEIDRA CARTER, | ) |
|       Plaintiff, | ) |
|     v. | ) Case No. 1:18-cv-07039 |
| ILLINOIS GAMING BOARD, MARK OSTROWSKI, KAREN WEATHERS, RUBEN SANTIAGO, FRANK SPIZZIRI, AGOSTINO LORENZI, WILLIAM DOSTER, ZENA WARD, CHRIS MOORE, THOMAS HOBGOOD and BETH DUESTERHAUS | ) ) ) ) ) ) ) **Jury trial demanded** |
|       Defendants. | ) |

THIRD AMENDED COMPLAINT

Now Comes the Plaintiff, **SAMEIDRA CARTER** ("Carter"), by and through her undersigned counsel, **THE FARRIS LAW FIRM**, and in support of her complaint against the **ILLINOIS GAMING BOARD** (the "IGB"), **MARK OSTROWSKI** ("Ostrowski"), **KAREN WEATHERS** ("Weathers"), **RUBEN SANTIAGO** ("SANTIAGO"), **FRANK SPIZZIRI** ("Spizziri"), **AGOSTINO LORENZI** ("LORENZI"), **WILLIAM DOSTER** ("Doster"), and **ZENA WARD** ("WARD") **CHRIS MOORE** ("MOORE") **THOMAS HOBGOOD** ("HOBGOOD") **BETH DUESTERHAUS** ("DUESTERHAUS") (from time to time these individuals are referred to as the "Individual Defendants"),

states as follows:

**I. Jurisdiction and Venue**

1. Carter alleges that the Individual Defendants violated her rights under 42 U.S.C.

§ 1983, by retaliating against her for engaging in speech protected by the First Amendment and that Defendants violated her rights under the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964 by retaliating against her in violation of the Act. This is a federal statute vesting jurisdiction in this Court under 28 U.S.C. §1331.

2. Carter also alleges that the IGB and the individual defendants violated her rights under the anti-retaliation provisions of the State Officials and Employees Ethics Act, *See* 5 ILCS 430/15 (hereafter the "Ethics Act"), an Illinois law. This Court has supplemental Jurisdiction pursuant to 28 U.S.C. § 1367(a) to hear this count of this lawsuit.

3. The allegations in this lawsuit relate to actions taken against Carter stemming from her employment with the IGB in Tinley Park, Illinois and Des Plaines, Illinois. As a result, venue is appropriate in this Court.

## II. Parties

4. Carter is an adult resident of Illinois. She was employed by the IGB as a Senior Special Agent from June of 2012 to July of 2017. She was terminated from her position with the IGB in July of 2017.

5. The IGB is an agency of the State of Illinois that was created pursuant to the Riverboat Gambling Act, 230 ILCS 10, for the purpose of enforcing certain

gaming laws in Illinois. According to its website:

> **The Board assures the integrity of riverboat gambling and video gaming through regulatory oversight of casino and video gaming operations; the licensing of suppliers to casinos and employees of casinos; and the licensing of video gaming manufacturers, distributors, suppliers, terminal operators, locations and individuals who service the VGTs**.

6. Ostrowski is the Administrator of the IGB and was serving in that capacity at the time of the events relevant to these proceedings. At all times relevant to this lawsuit he was acting under color of law. He is named in his individual capacity and, for the limited purpose of implementing equitable relief, is named in his official capacity.

7. Weathers, at the times relevant to these proceedings, was employed by the IGB as an EEOC Officer and as a Human Resources Liaison. At all times relevant to this lawsuit she was acting under color of law. She is named in her individual capacity.

8. Santiago, at all times relevant to this lawsuit, was employed by the IGB as a Supervisor. At all times relevant to this lawsuit he was acting under colorof law. He is named in his individual capacity.

9. Spizziri, at all times relevant to this lawsuit, was employed by the IGB as its Deputy Administrator of Enforcement. At all times relevant to this lawsuit he was acting under color of law. He is named in his individual capacity and, for the limited

purpose of implementing equitable relief is named in his official capacity.

10. Lorenzi, at all times relevant to this lawsuit, was employed by the IGB as a Gaming Operations Office. At all times relevant to this lawsuit he was acting under color of law. He is named in his individual capacity and, for the limited purpose of implementing equitable relief is named in his official capacity.

11. Doster, at all times relevant to this lawsuit, was employed by the IGB as a Video

Master Sergeant and . At all times relevant to this lawsuit he was acting under

color of law. He is named in his individual capacity and, for the limited purpose of implementing equitable relief is named in his official capacity.

12. Ward, at all times relevant to this lawsuit, was employed by the IGB as a

Master Sergeant. At all times relevant to this lawsuit she was acting under color of

law. She is named in his individual capacity and, for the purposes of implementing equitable relief is named in her official capacity.

13. Lorenzi, at all times relevant to this lawsuit, was employed by the IGB as a Gaming Operations Office. At all times relevant to this lawsuit he was acting under color of law. He is named in his individual capacity and, for the limited purpose of implementing equitable relief is named in his official capacity.

14. Duesterhaus, at all times relevant to this lawsuit, was employed by the IGB as a Labor Relations Liaison. At all times relevant to this lawsuit she was acting under color of law. She is named in his individual capacity and, for the limited purpose of implementing equitable relief is named in her official capacity.

15. Hobgood, at all times relevant to this lawsuit, was employed by the IGB as a Senior Special Agent. At all times relevant to this lawsuit he was acting under color of law. He is named in his individual capacity and, for the limited purpose of implementing equitable relief is named in his official capacity.

### III. Factual Allegations Relevant to All Counts

16. Carter was a sworn law enforcement officer employed by the IGB and assigned to locations in Tinley Park and Des Plaines, Illinois. She was employed in that capacity from June 2012 to July 2017.

17. Prior to commencing his employment with IGB, Carter had worked for various Illinois agencies dating back to 2001.

18. Effective January 1, 2013 Carter was promoted to Gaming Special Agent with the IGB.

19. Effective January 1, 2015 Carter was promoted to Senior Special Agent with the IGB.

20. In 2015 Carter was assigned to the Tinley Park office of IGB.

21. On September 28, 2015 Ward asked Carter to submit a memo regarding several cases that were assigned to Carter at that time.

22. As a result of Ward's behavior while requesting the memo from Carter, Carter submitted a complaint via memo to Doster.

23. As a result of Ward's behavior while requesting the memo from Carter, Carter an EEOC with Weathers and against Ward on October 1, 2015.

24. The basis of Carter's complaint was that Ward's behavior on September 28, 2015 was discriminatory and harassing.

25. As a result of her EEOC complaint, on October 6, 2015 Carter was reassigned from the IGB's Tinley Park office to their Des Plaines office

26. Aguilar was Carter's supervisor at the Des Plaines office.

27. On December 30, 2015 Weathers advised Carter that she had concluded her investigation of Carter's EEOC complaint and had not found any substantial evidence of discrimination.

28. In addition, since Ward had decided subsequent to the complaint to retire effective December 31, 2015, Carter was ordered to return to work at the IGB's Tinley Park location and report to Sergeant Ruben Santiago effective January 4, 2016.

29. Weathers failed to take appropriate action for the EEOC that Carter filed and instead sent her back to the Tinley Park, Illinois office.

30. Prior to being reassigned to the IGB's Tinley Park office effective January 4, 2016 Carter had an incident with IGB employee Moore.

31. On November 13, 2015 Carter and Moore were located at Ray O'Herron in Downer Grove.

32. Carter was in need of a shoulder holster for her service weapon and had gone to

33. Ray O'Herron to get one. It is unclear why Moore was present at O'Herron at the

same time as Carter.

34. When Carter got out of her vehicle, Moore got out of his car and demanded that

35. Carter tell him what had transpired between herself and Ward.

36. After Moore demanded information regarding issues between Ward and herself

37. Carter ignored Moore, prompting Moore to ask, "oh you're not going to speak?"

38. On November 16, 2015, three days after the incident at O'Herron, Moore submitted a

39. falsified memo to his supervisor alleging that while they were at O'Herron Carter had

intentionally opened her car door onto his and damaged it.

40. Moore intentionally made false statements about Carter to supervisors and falsified official reports to the IGB about Carter's behavior.

41. On November 19, 2015, Aguilar requested that Carter submit a memo to him regarding the November 13, 2015 incident at Ray O'Herron.

42. Carter completed the requested memo, but Aguilar requested that a second memo be submitted.

43. On November 19, 2015 Carter did submit a second memo to Aguilar.

44. Subsequent to Carter completing the memos, the IGB mounted an investigation into Carter.

45. The investigation was completed by the same individual that Carter had initially notified of Ward's inappropriate behavior; to whit Doster.

46. Doster completed his investigation on February 5, 2016 and the IGB determined that a pre-disciplinary meeting was required.

47. Carter was notified of the pre-disciplinary hearing on March 8, 2016 and was advised that it would take place on March 10, 2016.

48. Although the complaint against Carter intentionally was that she had intentionally opened her door onto Moore's, the IGB notified Carter that discipline was being contemplated for damage to a state vehicle, conduct un becoming, falsifying documentation and lying to a sworn law enforcement officer regarding prior disciplinary record.

49. On March 8, 2016 when she received notice of the pre-disciplinary hearing, Carter was pregnant, and the pregnancy was considered high-risk.

50. On March 6, 2016 Carter's doctor placed her on medical leave due to her high-risk pregnancy.

51. On March 8, 2016 the IGB approved that medical leave.

52. Carter's request was granted and on March 9, 2016 Doster sent Carter a memo advising her that the pre-disciplinary meeting would take place when she returned to work.

53. In March of 2017, Santiago completed an evaluation of Carter during her scheduled maternity leave, which was scheduled to conclude in May of 2017.

54. Santiago stated in said evaluation that Carter failed to return from work dating from March 8, 2017.

55. Carter returned to work in May of 2017 and received a memo on May 23, 2017 by Doster that the pre-disciplinary meeting would take place on May 26, 2017.

56. Doster's May 23, 2017 memo included a new charge of disclosing confidential.

57. The new charge stemmed from an alleged incident that happened in on September 22, 2015. However, the new charge was not levied against Carter until after she filed her EEOC complaint against Ward.

58. Way prior, on September 22, 2015, Carter and Hobgood interviewed an applicant together.

59. Initially Santiago was scheduled to accompany Carter to the interview, but on the day the interview was scheduled Santiago called in sick.

60. Subsequent to the interview, and without Carter's knowledge, Hobgood told supervisors that Carter had disclosed a confidential Suspicious Activity Report ("SAR") to the subject of the SAR.

61. Carter had not disclosed the SAR to the subject, moreover this did not become an issue until after Carter had filed her EEOC grievance against Ward.

62. Hobgood gave false information to supervisors about Carter.

63. Duesterhaus was part of a multidisciplinary team tasked with preparing the second set of charges which were levied against Carter 2 years after the alleged disclosure of confidential information

64. Duesterhaus participated in retaliatory disciplinary actions, which were without basis, against Carter.

65. When Carter returned to work in May of 2017, she sent Lorenzi a formal complaint of further harassment.

66. Lorenzi was the designated EEOC officer at the time.

67. Lorenzi failed to address the complaint of further harassment even though Carter worked for 3 weeks prior to her suspension pending termination.

68. On June 1, 2017 Carter submitted her response to the IGB's charges.

69. On June 6, 2017 Carter was placed on suspension pending termination, with the termination effective July 3, 2017.

70. On July 20, 2017 Carter filed a U.S. Equal Employment Opportunity Commission (the "EEOC") Charge of Discrimination through the Illinois Department of Human Rights ("IDHR). [Attached as Exhibit 1].

71. On July 21, 2017 the EEOC issued Carter a right to sue letter. [Attached as Exhibit 2].

72. The IDHR and EEOC have a Worksharing Agreement and on July 22, 2017 IDHR commenced an investigation into Carter's charge of discrimination.

73. The 365 (three hundred sixty-five) day expiration date for completion of the IDHR's investigation was July 22, 2018.

74. The IDHR did not complete its' investigation by July 22, 2018 and issued Carter a right to sue letter on July 23, 2018. [Attached as Exhibit 3].

75. Carter then commenced this action on October 19, 2018.

76. Carter would have commenced this action sooner, but the IGB made a bad faith settlement/reinstatement offer to Carter.

77. Carter accepted that offer verbally and the IGB retracted said offer.

**Count I**

*First Amendment retaliation as to the Individual Defendants*

78. Paragraphs 1-77 are incorporated herein.

79. Filing a grievance against a supervisor constitutes actions that is protected by the First Amendment to the United States Constitution.

80. The Individual Defendants, working collectively, have engaged in a coordinated attack to retaliate against Carter owing to the fact that she engaged in actions that are protected under the First Amendment.

81. This retaliation from the IGB, Ostrowski, Weathers, Spizziri, Lorenzi, Doster, Ward, Moore, Hobgood and Duesterhaus. includes, but is not limited to:

(1) suspending her from work with no basis to do so;

(2) terminating her from work with no basis to do so;

(3) stripping her of his police powers with no basis for doing so;

(4) giving her a performance evaluation that intentionally misstates his work performance and that is intended to undermine his future attempts at upward advancement;

(5) submitting her to a continual investigation without any basis or merit;

82. Each of the other Individual Defendants participated in all of the above referenced acts of retaliation.

83. Had Carter not engaged in activity protected by the First Amendment the Retaliatory acts referenced above would not have occurred.

84. In retaliating against Carter for speaking out on matters of public concern, the individual Defendants have violated his rights under the First Amendment to the United States Constitution.

85. The IGB has a pattern and practice of retaliating against individuals who point out corruption in its operations.

86. As a result of the violations of his rights under the First Amendment, Carter has sustained damages. These damages have been both monetary and non-monetary.

**WHEREFORE**, Carter respectfully requests that this Court enter judgment in her favor and against the Individual Defendants and the IGB and provide the following relief:

(A) Enter an order finding that Carter's rights under the First Amendment were violated.

(B) Issue an order to the IGB and Ostrowski directing that all retaliatory actions are stricken from her personnel files.

(C) Issue an order awarding Carter his damages to compensate her for both economic and non-economic damages he has sustained.

(D) Issue an order awarding her punitive damages to the extent permitted by law.

(E) Issue an order directing the Individual Defendants and the IGB to pay Carter's reasonable attorney fees associated with bringing this lawsuit.

(F) Other relief that this Court deems appropriate under the circumstances.

Carter requests that this claim be tried by a jury

## Count II

*Illinois Ethics Act as to IGB and Individual Defendants*

87. Paragraphs 1-86 are incorporated herein.

88. The Ethics Act provides that it is unlawful to take "retaliatory action against a State employee because the State employee . . . [d]iscloses or threatens to disclose to a supervisor or to a public body an activity, policy or practice of any officer, member, State agency, or other State employee that the State employee reasonably believes is in violation of a law, rule, or regulation." 5 ILCS 430/15-10.

89. Carters grievance constitutes actions that are protected by the Ethics Act.

90. The Individual Defendants, working collectively, and the IGB have engaged in a coordinated attack to retaliate against Carter for taking actions protected by the Ethics Act. This retaliation includes, but is not limited to:

(1) suspending her from work with no basis to do so;

(2) stripping him of her police powers with no basis for doing so;

  (3) terminating her from work without a basis to do so;

  (4) an attempt to undermine her reputation as a law enforcement officer;

  (5) giving her a performance evaluation that intentionally misstates his work performance and that will subsequently be used against her if and when he seeks work as a law enforcement officer;

  (6) submitting her to a continual investigation;

91. Had Carter not engaged in these activities protected under the Ethics Act she would not have been subjected to these retaliatory actions.

92. The IGB and the Individual Defendants all knew that he had engaged in activities protected by the Ethics Act.

93. In retaliating against Carter for speaking out on matters protected by the Ethics Act, the IGB and the Individual Defendants have violated her rights under that law.

94. As a result of the violations of her rights under the Ethics Act, Carter has sustained damages. These damages have been both monetary and non-monetary.

Wherefore, Carter respectfully requests that this Court enter judgment in her favor and against the IGB and the Individual Defendants and provide the following relief:

A. Enter an order finding that Carter's rights under the Ethics Act were violated.

B. Issue an order to the IGB directing that all retaliatory actions be stricken from Carter's personnel files.

C. Issue an order awarding Carter his damages to compensate her for the economic and damages he has sustained.

D. Issue an order awarding her punitive damages to the extent permitted by law.

E. Issue an order directing the IGB and the Individual Defendants to pay Carter's reasonable attorney fees associated with bringing this lawsuit.

F. Issue an order directing that the IGB and the Individual Defendants pay Carter liquidated (double) damages.

G. Other relief that this Court deems appropriate under the circumstances.

## COUNT III

*Title VII of the Civil Rights Act of 1964 as to IGB and individual defendants*

95. Paragraphs 1-94 are incorporated herein.

96. Title VII of the Civil Rights Act of 1964 prohibits an employer from retaliating against an employee wo has made a charge, testified, assisted or participated in any charge of unlawful discrimination.

97. Carter's October 1, 2015 internal EEOC complaint, against Ward, to Weathers constitutes a charge of unlawful discrimination.

98. The Individual Defendants, working collectively, and the IGB have engaged in a coordinated attack to retaliate against Carter for taking actions protected under Title 7 of the Civil Rights Act of 1964.

Wherefore, Carter respectfully requests that this Court enter judgment in her favor and against the IGB and the Individual Defendants and provide the following relief:

A. Enter an order finding that Carter's rights under the Ethics Act were violated.

B. Issue an order to the IGB directing that all retaliatory actions be stricken from Carter's personnel files.

C. Issue an order awarding Carter his damages to compensate her for the economic and damages he has sustained.

D. Issue an order awarding her punitive damages to the extent permitted by law.

E. Issue an order directing the IGB and the Individual Defendants to pay Carter's reasonable attorney fees associated with bringing this lawsuit.

F. Issue an order directing that the IGB and the Individual Defendants pay Carter liquidated (double) damages.

G. Other relief that this Court deems appropriate under the circumstances.

**Carter requests a jury trial on all counts**

Sameidra Carter

By: _____

Her Attorney

The Farris Law Firm
Helen J. Nowels
PO Box 922
Griffith, IN 46319
708-234-9394
#6298870

**EXHIBIT 1**

| CHARGE OF DISCRIMINATION | Charge Presented To | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [ ] FEPA<br>[X] EEOC | 440-2017-05038 |

Illinois Department Of Human Rights and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Sameidra D. Carter | (630) 649-0847 | 1979 |

Street Address: 513 Highland Ave., Oak Park, IL 60304

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| ILLINOIS GAMING BOARD | 500 or More | (312) 814-4700 |

Street Address: 8151 West 183rd Street, Suite F, Tinley Park, IL 60487

DISCRIMINATION BASED ON (Check appropriate box(es).)

[ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[X] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] GENETIC INFORMATION
[ ] OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 
Latest: 07-03-2017

[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Respondent around January 2012. My last position was Gaming Senior Special Agent. During my employment with Respondent, I filed an internal complaint of discrimination. Subsequently, I was falsely accused of damaging Respondent's property, providing false testimony, and lying to an agent during my job interview. An investigation was conducted and I was suspended and discharged after I return from my maternity leave.

I believe that I have been discriminated against because of my sex, female, and in retaliation for engaging in protected activity, in violation of the Title VII of the Civil Rights Act of 1964, as amended.

RECEIVED EEOC JUL 20 2017

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Date: Jul 20, 2017

Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

**EXHIBIT 2**

EEOC Form 161 (11/16)                    **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Sameidra D. Carter<br>513 Highland Ave.<br>Oak Park, IL 60304 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2017-05038 | Cristina Wodka,<br>Investigator | (312) 869-8096 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

- **NOTICE OF SUIT RIGHTS** -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_Julianne Bowman_  7/21/17

Enclosures(s)           Julianne Bowman,          (Date Mailed)
                         District Director

cc: **Mark Ostrowski**
    **Administrator**
    **ILLINOIS GAMING BOARD**
    **160 North Lasalle Street**
    **Suite 300**
    **Chicago, IL 60601**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2017-05038 |

**Illinois Department Of Human Rights** and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Sameidra D. Carter | (630) 649-0847 | 1979 |

Street Address: 513 Highland Ave., Oak Park, IL 60304

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| ILLINOIS GAMING BOARD | 500 or More | (312) 814-4700 |

Street Address: 8151 West 183rd Street, Suite F, Tinley Park, IL 60487

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest — Latest: 07-03-2017
☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

I was hired by Respondent around January 2012. My last position was Gaming Senior Special Agent. During my employment with Respondent, I filed an internal complaint of discrimination. Subsequently, I was falsely accused of damaging Respondent's property, providing false testimony, and lying to an agent during my job interview. An investigation was conducted and I was suspended and discharged after I return from my maternity leave.

I believe that I have been discriminated against because of my sex, female, and in retaliation for engaging in protected activity, in violation of the Title VII of the Civil Rights Act of 1964, as amended.

RECEIVED EEOC
JUL 20 2017
CHICAGO DISTRICT OFFICE

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Jul 20, 2017
Date — Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*



**ILLINOIS DEPARTMENT OF Human Rights**

Bruce Rauner, Governor
Janice Glenn, Acting Director

EXHIBIT 3

July 23, 2018

Sameidra D. Carter
513 Highland Ave.
Oak Park, IL 60304

Re:  Charge Number: 2018CR0316
     Respondent: Illinois Gaming Board

Dear Ms. Carter:

We regret to inform you that the time limitation for the Department of Human Rights (IDHR) to complete its investigation of your charge has expired. The expiration date was **July 22, 2018**.

As per the Illinois Human Rights Act, Section 7A-102(G) (Time Limit), you have the right to file a complaint directly with the Human Rights Commission or commence a civil action in the appropriate state circuit court if the IDHR has not completed the investigation of your case (either by issuing a notice of substantial evidence or a notice of dismissal) within 365 days from the date you filed your perfected signed and notarized charge, or within any extension of that time to which you and the Respondent have agreed in writing. IDHR has calculated the 365th day to be **July 21, 2018**.

If you wish to pursue your complaint, *you must either* **file a complaint with the Human Rights Commission OR commence a civil action in the appropriate state circuit court** within the 90-day window period after the expiration date. We have calculated the window period for filing your complaint or civil action to be from **July 22, 2018 through October 19, 2018**. If you file a complaint outside this 90-day window period, your complaint may be dismissed. **If you decide to file a civil action in Circuit court, please notify the U.S. EEOC.**

**\*The Appellate Courts in Watkins v. Office of the State Public Defender, ___ Ill.App.3d ____, 976 N.E.2d 387 (1st Dist. 2012) and Lynch v. Department of Transportation, ___ Ill.App.3d ___, 979 N.E.2d 113 (4th Dist. 2012), have held that discrimination complaints brought under the Illinois Human Rights Act ("IHRA") against the State of Illinois are barred by the State Lawsuit Immunity Act. (745 ILCS 5/1 et seq.). Complainants are encouraged to consult with an attorney prior to commencing a civil action in the Circuit Court against the State of Illinois.**

100 West Randolph Street, Suite 10-100, Chicago, IL 60601, (312) 814-6200, TTY (866) 740-3953, Housing Line (800) 662-3942
222 South College Street, Room 101, Springfield, IL 62704, (217) 785-5100
2309 West Main Street, Marion, IL 62959 (618) 993-7463
www.illinois.gov/dhr