UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAMEIDRA CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | 18 C 7039 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| ILLINOIS GAMING BOARD, MARK OSTROWSKI, KAREN WEATHERS, FRANK SPIZZIRI, RUBEN SANTIAGO, CHRIS MOORE, WILLIAM DOSTER, ZENIAH WARD, THOMAS HOBGOOD, AGOSTINO LORENZINI, and BETH DUESTERHAUS, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Sameidra Carter's initial and amended complaints alleged that the Illinois Gaming Board ("IGB") and several of its employees and officers violated the First Amendment and the Illinois State Officials and Employees Ethics Act, 5 ILCS 430/15-5 *et seq.*, by retaliating against her for complaining about discriminatory workplace conduct. Docs. 1, 14. The court dismissed without prejudice the First Amendment claim under Civil Rule 12(b)(6) and stated that it would relinquish its supplemental jurisdiction over the Illinois Ethics Act claim, *see* 28 U.S.C. § 1367(c)(3), if Carter did not replead a viable federal claim. Docs. 56-57 (reported at 2019 WL 6307650 (N.D. Ill. Nov. 25, 2019)).

Carter filed a second amended complaint, which repleads the First Amendment and Ethics Act claims and adds a retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Doc. 58. Defendants again move under Rule 12(b)(6) to dismiss. Doc. 66. The Illinois Ethics Act claim against the IGB and three of the individual defendants, and the

1

First Amendment retaliation claim in its entirety, are dismissed with prejudice, while the other claims may proceed.

## Background

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Carter's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Carter as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

The IGB is a state agency that enforces certain gaming laws in Illinois. Doc. 58 at ¶ 5. In 2015, the IGB employed Carter as a Senior Special Agent at its Tinley Park office. *Id*. at ¶¶ 16-20. On September 28, 2015, IGB Master Sergeant Zeniah Ward addressed Carter in a discriminatory and harassing manner. *Id*. at ¶¶ 12, 21-24. Carter complained about Ward's conduct to IGB Video Master Sergeant William Doster and IGB EEO Officer/Human Resources Liaison Karen Weathers. *Id*. at ¶¶ 7, 11, 22-23. (Carter incorrectly identifies Weathers as an "EEOC" officer and incorrectly characterizes her complaint to Weathers as an "EEOC complaint." *Id*. at ¶¶ 7, 23, 25. Weathers, who was not employed by the Equal Employment Opportunity Commission ("EEOC"), was an Equal Employment Opportunity ("EEO") officer,

and Carter's complaint to her was an EEO complaint. *See Gnutek v. Ill. Gaming Bd.*, 2017 WL 2672296, at *1, 4 (N.D. Ill. June 21, 2017) (referring to Weathers as the IGB's "EEO Officer"); *see also Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1022 (7th Cir. 2003) (same for an equivalent officer at another Illinois state agency).)

As a result of her complaint about Ward, Carter was reassigned on October 6, 2015 to the IGB's Des Plaines office. Doc. 58 at ¶ 25. On December 30, 2015, Weathers told Carter that Weathers had investigated her complaint and found no substantial evidence of discrimination. *Id*. at ¶ 27. Because Ward was set to retire on December 31, 2015, Carter was ordered to return to the Tinley Park office as of January 4, 2016. *Id*. at ¶ 28.

In the meantime, on November 13, 2015, when Carter was exiting her vehicle, IGB employee Chris Moore approached and demanded that she tell him what happened between her and Ward. *Id*. at ¶¶ 30-35. Three days later, Moore falsely told his supervisor that Carter had opened her door into his state-owned vehicle. *Id*. at ¶¶ 38-40. On November 19, 2015, at the request of a non-party supervisor, Carter submitted two memoranda regarding the incident with Moore. *Id*. at ¶¶ 41-43. The IGB began an investigation of Carter, which Doster concluded on February 5, 2016. *Id*. at ¶¶ 44-46. The IGB scheduled a pre-disciplinary hearing for March 10, 2016 to address allegations that Carter had damaged a state vehicle, engaged in conduct unbecoming, falsified documents, and lied to a sworn law enforcement officer. *Id*. at ¶¶ 46-48.

Two days before the scheduled hearing, the IGB approved Carter's being placed on medical leave due to her high-risk pregnancy, and the next day told her that the pre-disciplinary hearing would be rescheduled upon her return to work in May 2017. *Id*. at ¶¶ 49-53. During her absence, IGB Supervisor Ruben Santiago completed an evaluation of Carter, in which he stated that Carter did not return to work as of March 8, 2017. *Id*. at ¶¶ 8, 53-54. Upon her return to

3

work in May 2017, Carter was notified that the pre-disciplinary hearing would occur on May 26, 2017. *Id*. at ¶ 55.

In addition to the matters arising from her interaction with Moore, Carter was charged with "disclosing confidential [information]." *Id*. at ¶¶ 56-57. Carter and Thomas Hobgood interviewed an applicant together on September 22, 2015, and Hobgood falsely told supervisors that Carter had disclosed to the interviewee a confidential report. *Id*. at ¶¶ 58-62. Carter in fact had not disclosed the confidential report, and the IGB did not press the issue regarding that incident until after Carter complained about Ward. *Id*. at ¶¶ 57, 61-62. IGB Labor Relations Liaison Beth Duesterhaus "was part of a multidisciplinary team tasked with preparing the second set of charges" against Carter. *Id*. at ¶¶ 14, 63-64.

After returning to work, Carter sent IGB Gaming Operations Officer Agostino Lorenzini, in his role as designated EEO officer, a formal complaint of further harassment. *Id*. at ¶¶ 10, 65-66. (As with Weathers, Carter incorrectly refers to Lorenzini as the IGB's "EEOC" officer. *Id*. at ¶ 66.) Lorenzini did not address Carter's complaint during the following three weeks. *Id*. at ¶ 67. On June 6, 2017, Carter was placed on suspension pending termination. *Id*. at ¶ 69. She was terminated effective July 3, 2017. *Ibid*.

On July 20, 2017, Carter filed a charge with the EEOC alleging retaliation for complaining about discrimination, and the EEOC issued a right-to-sue letter on July 21, 2017. *Id*. at ¶¶ 70-71. The Illinois Department of Human Rights ("IDHR") did not complete its investigation within one year and issued Carter a right-to-sue letter on July 23, 2018. *Id*. at ¶¶ 72-74. Carter commenced this suit on October 19, 2018, and she would have done so sooner but for a bad faith settlement and reinstatement offer from the IGB, which the IGB retracted after Carter had accepted it verbally. *Id*. at ¶¶ 75-77.

**Discussion**

I.   **First Amendment Retaliation Claim**

Carter's First Amendment claim alleges that the individual defendants—Santiago, Mark Ostrowski, Frank Spizziri, Lorenzini, Doster, Moore, Hobgood, Weathers, Duesterhaus, and Ward—retaliated against her for complaining about the discriminatory and harassing conduct she allegedly suffered at work. "To establish a claim for retaliation in violation of the First Amendment, a public employee first must prove that her speech is constitutionally protected." *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016). Defendants contend that Carter's complaints about that conduct are not protected First Amendment speech. Doc. 67 at 5-7; Doc. 71 at 2-4. "The determination of whether speech is constitutionally protected is a question of law." *Kubiak*, 810 F.3d at 481.

"For a public employee's speech to be protected under the First Amendment, the employee must show that (1) [she] made the speech as a private citizen, (2) the speech addressed a matter of public concern, and (3) [her] interest in expressing that speech was not outweighed by the state's interests as an employer in promoting effective and efficient public service." *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) (internal quotation marks omitted); *see also Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) ("[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."). Thus, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Kubiak*, 810 F.3d at 481 (quoting *Garcetti*, 547 U.S. at 421). "Determining the official duties of a public employee requires a practical inquiry into what duties the employee is expected to perform, and is not limited to the formal job description." *Ibid.* (internal quotation marks omitted).

5

For an employee's speech to fall outside the First Amendment's scope, it is not enough that the speech took place "inside [an] office, rather than publicly," or that it "concerned the subject matter of [the plaintiff's] employment." *Garcetti*, 547 U.S. at 420-21; *see also Bivens v. Trent*, 591 F.3d 555, 561 (7th Cir. 2010) ("[T]he fact that … speech was entirely internal does not itself render the speech unprotected … .") (citing *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415-16 (1979)). The key question, rather, is whether the speech was made "pursuant to [the employee's] official duties," *Garcetti*, 547 U.S. at 420-21—that is, whether the speech "owe[d] its existence to a public employee's professional responsibilities," *id*. at 421-22.

Settled precedent establishes the following regarding whether a public employee's report of official wrongdoing is protected First Amendment speech. If the public employee reports official misconduct in the manner directed by official policy, to a supervisor or an external body with formal oversight responsibility, then the employee speaks pursuant to her official duties and her speech is unprotected by the First Amendment. *See Roake v. Forest Pres. Dist. of Cook Cnty.*, 849 F.3d 342, 346-47 (7th Cir. 2017) (where a police officer complained to his employer about racial profiling and unlawful disciplinary action); *Kubiak*, 810 F.3d at 481-82 (where a police officer reported to her supervisor, her office director, and the Internal Affairs Division that a colleague "verbally assaulted" her); *Fairley v. Andrews*, 578 F.3d 518, 522 (7th Cir. 2009) (where Cook County Jail guards filed internal complaints in the manner required by jail policy); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1091 (7th Cir. 2008) (where an IGB administrator reported agency misconduct to "a legislative committee responsible for overseeing the [IGB's] activities"); *Vose v. Kliment*, 506 F.3d 565, 570-71 (7th Cir. 2007) (where a police sergeant reported misconduct to his supervisors); *Sigsworth v. City of Aurora*, 487 F.3d 506, 511 (7th Cir. 2007) (where a detective reported misconduct to his supervisor, as required by established

6

policy); *Spiegla v. Hull*, 481 F.3d 961, 965-67 (7th Cir. 2007) (where a correctional officer reported violations of prison security rules to a supervisor, consistent with official policy). By contrast, if an employee testifies about misconduct to a jury or grand jury, or reports misconduct outside official channels or in violation of official policy, she speaks as a private citizen and her speech may be constitutionally protected. *See Kristofek v. Vill. of Orland Hills*, 832 F.3d 785, 793-94 (7th Cir. 2016) (where a police officer reported improperly voided citations to fellow officers and to an outside agency despite lacking the express obligation to do so); *Chrzanowski v. Bianchi*, 725 F.3d 734, 739-40 (7th Cir. 2013) (where a county prosecutor testified under subpoena before a grand jury and at trial regarding alleged wrongdoing by his supervisors); *Chaklos v. Stevens*, 560 F.3d 705, 709-12 (7th Cir. 2009) (where Illinois State Police ("ISP") employees protested an ISP contract award to an ISP procurement official, rather than to the individuals—the Attorney General of Illinois and the chief procurement officer—required by the Illinois Procurement Code); *Houskins v. Sheahan*, 549 F.3d 480, 491 (7th Cir. 2008) (where a county jail social worker reported to the city police, and not to the county sheriff, that a county correctional officer hit her).

Given this precedent, Carter's internal complaints about the discriminatory and harassing conduct she allegedly suffered at work are not constitutionally protected. Carter's internal complaints—in 2015 to Doster and Weathers, and in 2017 to Lorenzini, Doc. 58 at ¶¶ 22-24, 65-66—were made through the appropriate chain of command to IGB officials charged with relevant oversight authority, and thus are akin to the complaints held in *Roake*, *Kubiak*, *Fairley*, *Vose*, *Sigsworth*, and *Spiegla* to fall outside the First Amendment's scope. *See Tamayo*, 526 F.3d at 1091 (holding that "reports by government employees to their superiors concerning alleged wrongdoing in their government office [a]re within the scope of their job duties"). It

7

follows that Carter's First Amendment retaliation claim fails as a matter of law insofar as it rests on those internal complaints.

An independent ground for holding Carter's internal complaints constitutionally unprotected is that they did not address a matter of public concern. "[P]ublic concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." *Craig v. Rich Twp. High Sch. Dist. 227*, 736 F.3d 1110, 1116 (7th Cir. 2013) (alteration in original) (quoting *City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004)).

Carter alleges that "[t]he basis of [her] complaint [to Doster and Weathers] was that Ward's behavior … was discriminatory and harassing." Doc. 58 at ¶ 24; *see also id*. at ¶ 65 (alleging that Carter complained to Lorenzini about "further harassment"). In her opposition brief, Carter contends that "[d]iscriminatory and harassing behavior towards an employee, by a public official … is certainly a matter of public interest." Doc. 70 at 3. But as explained in the court's earlier opinion, 2019 WL 6307650, at *4, *Kubiak* expressly rejected the proposition "that speech involving police departments and misconduct of officers is always a matter of public concern," instead explaining that "when analyzing the content of the speech, … [the court] must … focus on the particular content of the speech," 810 F.3d at 483. And *Kubiak* held that where, as here, a government employee complains that a fellow employee, in connection with workplace interactions, treated her in an improper manner, the speech does not qualify as a matter of public concern. *Id*. at 483-84; *see also Kristofek*, 712 F.3d at 986 (reaffirming that speech designed "simply to further a purely personal grievance … does not involve a matter of public concern"); *Gross v. Town of Cicero*, 619 F.3d 697, 706 (7th Cir. 2010) ("Purely personal grievances do not garner First Amendment protection, including personal grievances about

sexual harassment in the workplace.") (citations omitted). Carter accordingly does not state a viable First Amendment retaliation claim arising from her internal complaints about harassment because those complaints did not involve a matter of public concern.

Nor can Carter's 2017 EEOC charge predicate a First Amendment retaliation claim. Even if an EEOC charge can be protected speech, Carter filed her charge on July 20, 2017, Doc. 58 at pp. 16, 18, after her July 3, 2017 termination and thus after any of the alleged retaliatory conduct occurred. Carter's EEOC charge therefore cannot form the basis of a First Amendment retaliation claim. *See Diadenko v. Folino*, 741 F.3d 751, 756 (7th Cir. 2013) (holding that the plaintiff's First Amendment retaliation claim failed when there was no evidence that her protected speech was "a motivating factor" for the alleged retaliation).

Carter's First Amendment retaliation claim is dismissed, and because she has already had an opportunity to replead that claim, the dismissal is with prejudice. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("Generally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem … .").

## II.  Title VII Retaliation Claim

Defendants contend that Carter's Title VII claim is time-barred on two grounds: (1) she failed to file an EEOC charge within 300 days of the alleged discriminatory action; and (2) she failed to bring her Title VII claim within 90 days of her receipt of a right-to-sue letter. Doc. 67 at 10-11. "Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (internal quotation marks omitted). That said, "dismissal under Rule 12(b)(6) … is appropriate if the complaint contains everything necessary to establish that the claim is untimely." *Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018) (internal quotation marks

9

omitted). Thus, to warrant dismissal on limitations grounds, "the plaintiff must affirmatively plead himself out of court; the complaint must plainly reveal that the action is untimely." *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 614 (7th Cir. 2014) (alterations and internal quotation marks omitted); *see also Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) ("[B]ecause affirmative defenses frequently turn on facts not before the court at the pleading stage, dismissal is appropriate *only* when the factual allegations in the complaint unambiguously establish all the elements of the defense.") (alteration, citations, and internal quotation marks omitted).

Defendants first contend that Carter's claim is time-barred because she filed her administrative charges more than 300 days after the allegedly unlawful conduct occurred. A plaintiff in Illinois who wishes to bring a Title VII claim must first file an administrative charge within 300 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e); *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 463 (7th Cir. 2016); *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 839 (7th Cir. 2014). Failure to file a charge within that time renders the claim untimely. *See Boston*, 816 F.3d at 463. Carter filed her administrative charges on July 20, 2017. Doc. 58 at pp. 16, 18. In Defendants' view, "[t]he alleged discriminatory conduct … occurred on or around October 1, 2015 and November 19, 2015, well outside the 300 day requirement." Doc. 67 at 11. This argument fails to acknowledge that Carter also challenges her June 2017 suspension and July 2017 termination. Doc. 58 at ¶ 69; *id*. at pp. 16, 18. Because the suspension and termination occurred fewer than 300 days before Carter filed her administrative charges, her Title VII claim is not time-barred on this ground.

Defendants concede that Carter brought "her original complaint in this action on October 19, 2018," within the 90-day window after receiving the IDHR right-to-sue letter, but contend

that her Title VII claim is nonetheless time-barred because her "original complaint and her First Amended Complaint did not bring a Title VII [claim]." Doc. 67 at 11. A Title VII plaintiff must file suit within 90 days of receiving a right-to-sue letter. *See* 42 U.S.C. § 2000e-5(f)(1) ("[W]ithin ninety days after the giving of such notice[,] a civil action may be brought against the respondent named in the charge … ."); *Lee v. Cook Cnty.*, 635 F.3d 969, 971 (7th Cir. 2011) ("The EEOC issued right-to-sue letters …, and recipients have 90 days to commence litigation."). Because Defendants acknowledge that Carter's Title VII claim would have been timely had she included it in her original complaint, the Title VII claim she raised for the first time in her second amended complaint is timely if it relates back to her original complaint under Rule 15(c)(1)(B). *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1030 (7th Cir. 2013) (holding that a Title VII retaliation claim included for the first time in the plaintiff's third amended complaint would relate back to the initial complaint so long as the amendment was permitted by Rule 15(a)); *see also Smith v. Union Pac. R.R., Co.*, 564 F. App'x 845, 847 (7th Cir. 2014) (citing *Luevano* and holding that, for purposes of the 90-day limitations period, the "amended complaint asserted a claim arising out of the defendant[s'] conduct set out in the original pleading and relate[d] back to [the plaintiff's] timely filed original complaint"). Here, because the underlying conduct alleged in the second amended complaint is the same as the underlying conduct alleged in the original complaint, the Title VII claim added for the first time in the second amended complaint relates back to the original complaint. And even if this reasoning were subject to challenge, Defendants do not address the relation back doctrine, Doc. 67 at 11, thus forfeiting the point for purposes of their motion to dismiss. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an

affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted).

III.  **Illinois Ethics Act Claim**

Defendants contend that Carter "cannot assert a claim for relief under the Ethics Act against [the] IGB in federal court." Doc. 67 at 10. Carter "admits that states and state entities have sovereign immunity," Doc 70 at 6, and does not otherwise counter Defendants' argument, thereby forfeiting the point. *See G & S Holdings LLC*, 697 F.3d at 538; *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.") (internal quotation marks omitted); *see also Boogaard v. NHL*, 891 F.3d 289, 294-96 (7th Cir. 2018) (affirming the district court's holding that the plaintiffs forfeited their claims by failing to respond to the defendant's argument under Rule 12(b)(6) that they failed to state a claim). Carter's Ethics Act claim against the IGB accordingly is dismissed, and the dismissal is with prejudice. *See Cooper v. Ill. Dep't of Human Servs.*, 758 F. App'x 553, 554 (7th Cir. 2019) (holding that dismissal on Eleventh Amendment grounds should be with prejudice).

Defendants next contend that the Ethics Act claim should be dismissed as to Ward, Spizziri, Santiago, Duesterhaus, and Weathers because Carter does not allege that those defendants engaged in retaliatory action against her. Doc. 67 at 7. The Ethics Act defines "[r]etaliatory action" as "the reprimand, discharge, suspension, demotion, denial of promotion or transfer, or change in the terms or conditions of employment of any State employee, that is taken in retaliation for a State employee's involvement in protected activity, as set forth in Section 15-10." 5 ILCS 430/15-5. Carter does not counter Defendants' argument as to Spizziri,

Duesterhaus, or Weathers, thereby forfeiting the point. *See Boogaard*, 891 F.3d at 294-96; *G & S Holdings LLC*, 697 F.3d at 538; *Alioto*, 651 F.3d at 721. Accordingly, the Ethics Act claim is dismissed as to Spizziri, Duesterhaus, and Weathers, and the dismissal is with prejudice given Carter's forfeiture. *See Baker v. Chisom*, 501 F.3d 920, 926 (8th Cir. 2007) (affirming the dismissal with prejudice of a claim where the plaintiff "failed to defend that claim or to urge that it be dismissed without prejudice").

As for Ward, Defendants argue that she could not have participated in any retaliatory action because she "was not an employee of the IGB when [Carter] was suspended, terminated, or stripped of her police power." Doc. 67 at 8. Carter responds that "[i]t is plausible that Ward had something to do with [Carter's] transfer" to the Des Plaines office, particularly since Carter was able to return to Tinley Park shortly after Ward announced her retirement. Doc. 70 at 6. Defendants reply that even if Ward was involved, Carter's reassignment was not a retaliatory action because she does not allege it was unfavorable. Doc. 71 at 4. That argument fails, at least at this juncture, because the pleadings do not definitively answer whether the Des Plaines office was viewed as an unfavorable assignment compared to the Tinley Park office.

As for Santiago, who is alleged to have written in his evaluation of Carter that she "failed to return [to] work dating from March 8, 2017," even though her maternity leave was scheduled to end in May 2017, Doc. 58 at ¶¶ 53-54, Defendants argue that "[d]escribing a fact in an evaluation is not a retaliatory action." Doc. 67 at 8. Carter responds that "Santiago falsely indicated that [Carter] had not returned from work in March of 2017, even though [she] was not scheduled to return to work until May," and that "[i]t is plausible that Santiago did so because he" was friends with Ward, the subject of Carter's 2015 internal complaints. Doc. 70 at 6. Defendants reply that this is "purely speculative" and that there is no "plausible inference that

these supposed actions led to any adverse action toward [Carter]." Doc. 71 at 4-5. But Santiago's evaluation was undertaken just before Carter's pre-disciplinary hearing, Doc. 58 at ¶¶ 53-55, and a reasonable inference at this stage is that the negative evaluation played a role in her termination. *See Wagner v. Dep't of Commerce & Econ. Opportunity*, 2019 WL 4865565, at *12 (Ill. App. Oct. 1, 2019) (considering an Ethics Act claim where the plaintiff challenged as a retaliatory action a negative performance evaluation that preceded his termination).

## Conclusion

Defendants' motion to dismiss is granted in part and denied in part. Carter's First Amendment retaliation claim is dismissed with prejudice, as is her Illinois Ethics Act claim against the IGB, Spizziri, Duesterhaus, and Weathers. Defendants shall answer the surviving portions of the operative complaint by April 29, 2020.

April 2, 2020

_____
United States District Judge